UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: MAUREEN                                    CIVIL ACTION
PHILIPS LEBLANC

                                                  NO. 18-11748

                                                  SECTION "F"


ORDER AND REASONS

Before the Court is an appeal from the United States
Bankruptcy Court's order granting in part and denying in part Ocwen
Loan Servicing, LLC's motion to annul cancellation of mortgage and
to rank mortgages.  For the reasons that follow, the Court AFFIRMS
the Bankruptcy Court's ruling that the property description in the
Original Ocwen Mortgage was insufficient to encumber Lot 47 but
REMANDS the matter for a determination on the merits as to the
validity and rank of the SBA Mortgage.

**Background**

The issue in this bankruptcy appeal is whether a property
description in a conventional mortgage is sufficient to encumber
a residential lot located in a subdivision in Slidell, Louisiana.
The facts underlying the appeal date back to 2001:

In August of 2001, Maureen Philips LeBlanc purchased adjacent
Lots 46 and 47, situated in Section 1 of Bayou Bonfouca Estates in

Slidell, Louisiana.[1]  Three years later, on May 5, 2004, LeBlanc

sold Lot 46.  The following year, on July 25, 2005, she executed

---

[1] Pursuant to an Act of Cash Sale dated August 27, 2001, Maureen
LeBlanc purchased the following property from H.K. and Chloe Webb:

> ALL THAT CERTAIN LOT OR PARCEL OF LAND, together with
> all the buildings and improvements thereon, and all the
> rights, ways, privileges, servitudes, appurtenances and
> advantages  thereunto  belonging  or  in  anywise
> appertaining,  situated  in  BAYOU  BONFOUCA  ESTATES,
> SECTION 1, Slidell, St. Tammany Parish, Louisiana, to-
> wit:
>
> LOT 46 of said subdivision and more fully described as
> follows:
>
> Said Lot 46 has frontage of 50 feet on Middlebrook Drive,
> with a depth on the East of 123.9 feet, a depth on the
> West of 121.6 feet, with a width in the rear of 100 feet,
> more or less, which is varied by the traverse of Bayou
> Bonfouca.
>
> All as will be seen by reference to the plat of Survey
> No. 2028 by John H. Sollberger, dated August 12, 1958.
>
> Further in accordance with survey by Ivan M. Borgen,
> C.E., dated February 14th, 1978, Survey No. 14,174, copy
> of which is attached to Act. No. 382991.
>
> Being the same property acquired by vendors herein by
> act dated February 20, 1978, recorded in COB 863, folio
> 20.
>
> ALL THAT CERTAIN LOT OF PARCEL OF GROUND, together with
> all the buildings and improvements thereon, and all the
> rights, ways, privileges, servitudes, appurtenances and
> advantages  thereunto  belonging  or  in  anywise
> appertaining,  situated  in  BAYOU  BONFOUCA  ESTATES,
> SECTION 1, Slidell, St. Tammany Parish, Louisiana, to-
> wit:
>
> LOT 47 of said subdivision and more fully described as
> follows:

a promissory note in favor of Quicken Loans, Inc., secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Quicken Loans.[2]  Recorded in the St. Tammany Parish mortgage records on August 15, 2005 as Instrument No. 1512016, the "Original Ocwen Mortgage" describes the mortgaged property as follows:

> Tax ID Number: 1240534749
>
> Land situated in the Parish of St. Tammany, State of Louisiana is described as follows:
>
> All that certain Lot or Parcel of Land, together with all the buildings and improvements thereon, and all the rights, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in BAYOU BONFOUCA ESTATES, SECTION 1, Slidell, Street. [*sic*] Tammany Parish, to-wit: **Lot 46** of said subdivision and more fully described as follows: Said Lot 46 has a frontage of 50.00 feet on

---

> Said Lot 47 has frontage of 50 feet on Middlebrook Drive, with a depth on the East of 150.2 feet, a depth on the West of 123.9 feet, with a width in the rear of 100 feet more or less which is varied by the traverse of Bayou Bonfouca.
>
> All as will be seen by reference to the plat of Survey No. 2028 by John H. Sollberger, dated August 12, 1958.
>
> Further in accordance with survey by Ivan M. Borgen, C.E., dated February 14th, 1978, Survey No. 14,174, which is attached to Act. No. 382990.
>
> Being the same property acquired by owners herein by act dated February 20, 1978, in COB 863, folio 18.

[2] Following several assignments, the note and mortgage are currently held by Deutsche Bank National Trust Company as Trustee for IndyMac INDEX Mortgage Loan Trust 2005-AR33, for which Ocwen Loan Servicing, LLC is the servicer.  Thus, for purposes of this appeal, the Court refers to the July 25, 2005 mortgage as the "Original Ocwen Mortgage."

Middlebrook Drive, with a depth on the East of 123.9
feet, a depth on the West of 121.6 feet, with a width in
the rear of 100.00 feet, more or less, which is varied
by the traverse of Bayou Bonfouca. All as will be seen
by reference to plat of Survey No. 2028 by John
Sollberger, dated August 12, 1958. Further in
accordance with survey by Ivan M. Borgen, C.E., dated
February 14th, 1978, Survey No. 14,174, copy of which is
attached to Act No. 382991.

Commonly known as: 161 Middlebrook Dr., Slidell, LA
90458

Emphasis added. LeBlanc intended to place the mortgage on Lot 47

of Bayou Bonfouca Estates, Section 1, which bears the stated

municipal address of 161 Middlebrook Drive and the tax ID number

listed in the mortgage property description. However, the Original

Ocwen Mortgage erroneously refers to "Lot 46" and contains the

metes and bounds description for the lower-numbered lot.[3]

   Soon after, Ms. LeBlanc executed three additional mortgages.

First, she issued a multiple indebtedness mortgage in favor of

Hibernia National Bank, which is currently assigned to Real Time

Resolutions, Inc. Recorded in the St. Tammany Parish mortgage

---

[3] During a trial conducted before the Bankruptcy Court on July 27,
2018, Ms. LeBlanc testified that Lots 46 and 47 shared the address
of 161 Middlebrook Drive at the time she purchased them:

   **The Court:** All right, let's back up. You bought two
   lots when you bought –
   **A:** Uh-huh, and it was 161 Middlebrook Drive.
   **The Court:** Okay. So you considered both lots to be your
   home?
   **A:** Right . . . .
   **The Court:** But you treated the whole property as your
   home?
   **A:** Right, when I purchased it that's how it was set up.

records on November 22, 2005, the Real Time Mortgage references 161 Middlebrook Drive and contains the same tax ID number as that included in the Original Ocwen Mortgage, but it refers to "Lot 47" and contains the metes and bounds description for the higher-number lot:

> ALL THAT CERTAIN LOT OR PARCEL OF GROUND, TOGETHER WITH ALL THE BUILDINGS AND IMPROVEMENTS THEREON, AND ALL THE RIGHTS, PRIVILEGES, SERVITUDES, APPURTENANCES AND ADVANTAGES THEREUNTO BELONGING OR IN ANYWISE APPERTAINING, SITUATED IN BAYOU BONFOUCA ESTATE, SECTION 1, SLIDELL, ST. TAMMANY PARISH, LOUISIANA, TO-WIT: LOT 47 OF SAID SUBDIVISION AND MORE FULLY DESCRIBED AS FOLLOWS: SAID LOT 47 HAS A FRONTAGE OF 50 FEET ON MIDDLEBROOK DRIVE, WITH A DEPTH ON THE EAST OF 150.2 FEET, A DEPTH ON THE WEST OF 123.9 FEET, AND A WIDTH IN THE REAR OF 100 FEET MORE OR LESS WHICH IS VARIED BY THE TRAVERSE OF BAYOU BONFOUCA.

Next, on December 13, 2005, LeBlanc executed a mortgage in favor of the U.S. Small Business Administration, which was recorded in the St. Tammany Parish mortgage records on January 11, 2006.[4] Finally, LeBlanc executed another mortgage in favor of MERS nearly identical to the Original Ocwen Mortgage, except that it identifies the mortgaged property as Lot 47, rather than Lot 46, and contains the metes and bounds for Lot 47. Although the "Corrected Ocwen Mortgage" is ostensibly dated July 25, 2005, it was not recorded in the St. Tammany Parish mortgage records until March 8, 2006.[5]

---

[4] The record on appeal contains neither a copy of the SBA Mortgage, nor the associated Act of Correction that was recorded in the mortgage records on April 5, 2006.
[5] The Corrected Ocwen Mortgage describes the mortgaged property, in full, as follows:

Thereafter, on June 7, 2006, the Clerk of Court for St. Tammany Parish cancelled the Original Ocwen Mortgage from the mortgage records, at the request of MERS. Contrary to its representations, MERS did not hold the promissory note secured by the Original Ocwen Mortgage at that time, and the note had not been satisfied.

A decade later, on August 31, 2017, Maureen Philips LeBlanc filed for bankruptcy under Chapter 13. Contending that the

---

Tax ID Number: 1240534749

Land situated in the Parish of St. Tammany, State of Louisiana is described as follows:

All that certain lot or parcel of ground, together with all the buildings and improvements thereon, and all the rights, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in Bayou Bonfouca Estates, Section I, Slidell, St. Tammany Parish, to-wit:

Lot 47 of said subdivision and more fully described as follows:

Said Lot 47 has a frontage of 50 feet on Middlebrook Drive, with a depth on the East of 150.2 feet, a depth on the West of 123.9 feet, with a width in the rear of 100 feet more or less which is varied by the traverse of Bayou Bonfouca.

All as will be seen by reference to plat of Survey No. 2028 by John Sollberger, dated August 12, 1958. Further in accordance with survey by Ivan M. Borgen, C.E., dated February 14th, 1978, Survey No. 14,174, which is attached to Act No. 382990.

Commonly known as: 161 Middlebrook Dr., Slidell, LA 90458

Original Ocwen Mortgage ranks as the first of three mortgages recorded against Lot 47 in Section 1 of Bayou Bonfouca Estates, Ocwen moved the Bankruptcy Court for an order: (1) annulling the erroneous cancellation of the Original Ocwen Mortgage; and (2) declaring that the property description in that mortgage is sufficient to encumber Lot 47 and rank ahead of all mortgages recorded after August 15, 2005.

After conducting a trial and entertaining witness testimony, the Bankruptcy Court issued an Order on October 30, 2018, granting in part and denying in part Ocwen's motion. In its ruling, the Bankruptcy Court annulled the cancellation of the Original Ocwen Mortgage but held that the property description in the Original Ocwen Mortgage was insufficient to encumber or alert a third party that it affects Lot 47. Accordingly, the Bankruptcy Judge determined that Ocwen's interest in Lot 47 dates from the recordation of the Corrected Ocwen Mortgage on March 8, 2006, and therefore, ranks behind the Real Time Mortgage and the SBA Mortgage.

It is from this Order that Ocwen now appeals. Ocwen submits that the Bankruptcy Court erred in holding that the Original Ocwen Mortgage lacked a sufficient property description to encumber Lot 47 in Section 1 of Bayou Bonfouca Estates. In the alternative, insofar as the Bankruptcy Court was correct regarding the insufficiency of the Original Ocwen Mortgage's property

description, Ocwen submits that it erred in finding that the SBA
Mortgage ranks ahead of the Corrected Ocwen Mortgage when there is
no evidence regarding the validity or rank of the SBA Mortgage in
the record.

## I.

A district court functions as an appellate court when
reviewing the decision of a bankruptcy court. In re Webb, 954
F.2d 1102 (5th Cir. 1992). The standard of review depends upon
whether a finding of fact or conclusion of law is subject to
review. When findings of fact are reviewed, the clearly erroneous
standard applies. United States v. United States Gypsum Co., 333
U.S. 364, 395 (1948). However, where a finding of fact is premised
on an improper legal standard, it is not protected by the clearly
erroneous rule and is reviewed *de novo*. In re Missionary Baptist
Foundation of America, 818 F.2d 1135, 1142 (5th Cir. 1987).

## II.

The first issue on appeal is whether the Bankruptcy Court
erred in determining that the Original Ocwen Mortgage lacked a
sufficient property description to encumber Lot 47 of Bayou
Bonfouca Estates, Section 1, in Slidell, Louisiana. The Bankruptcy
Judge ruled that the description was misleading to those searching
the public records for documents affecting Lot 47 because Lots 46
and 47 both exist, were both owned by LeBlanc at one point in time,
and had at one time carried the same municipal address. After

conducting a *de novo* review, the Court finds that the property description in the Original Ocwen Mortgage was misleading and therefore insufficient to create a valid conventional mortgage.

*A.*

Under Louisiana law, a mortgage is a right over property that secures an underlying obligation. See La. Civ. Code arts. 3278-3287. Louisiana Civil Code article 3288 sets forth the requirements for a valid conventional mortgage, one that is created by contract; it provides:

> A contract of mortgage **must state precisely the nature and situation of each of the immovables or other property over which it is granted;** state the amount of the obligation, or the maximum amount of the obligations that may be outstanding at any time and from time to time that the mortgage secures; and be signed by the mortgagor.

La. Civ. Code art. 3288 (emphasis added). The purpose of this property description requirement is "to give notice to third persons of exactly what property is mortgaged." See In re Vezinot, 20 B.R. 950, 953 (Bankr. W.D. La. 1982) (citing Gretna Finance Co. v. Camp, 212 So. 2d 857 (La. App. 4 Cir. 1968)).[6]

---

[6] Although In re Vezinot and Gretna Finance Co. interpreted former Louisiana Civil Code Article 3306, "[t]he continuation of the exact wording of the former Article [in Louisiana Civil Code Article 3288] is intended to insure [*sic*] that this jurisprudence will continue to be authoritative in determining what kinds of descriptions are sufficient, both between the parties and as to third persons, to validly mortgage property." See La. Civ. Code art. 3288 cmt. (b).

While there is no bright-line rule for determining the sufficiency of a property description in a mortgage or deed, Louisiana jurisprudence has distinguished between descriptions that are misleading and those that are ambiguous. This case literature instructs that a misleading description is insufficient but that an ambiguous description may be valid, provided it can be clarified by extrinsic evidence:

> A deed is deemed to constitute notice to third parties where it enables the court to locate and identify with certainty, the property intended to be conveyed, with the aid of such extrinsic evidence as is admissible under the rules of evidence. The recorded description need not be given with such particularity as to make resort to extrinsic evidence absolutely unnecessary. However, the description may not be so inaccurate or faulty as to be misleading.

Wood v. Morvant, 321 So. 2d 914, 918 (La. App. 1 Cir. 1975).

Whether an inaccurate description is misleading turns on whether the descriptive error is apparent from the public records. See id. at 919 ("We find that in each instance the descriptive errors in question were apparent on the face of the public record, namely the official township maps on file and of record in the office of the Clerk and Recorder."); see also In re Vezinot, 20 B.R. at 954 ("Third persons searching the records for mortgages should not be bound to look beyond the mortgage records unless the mortgage itself refers to another recorded instrument."). Applying this standard, courts have recognized that "where the description in the recorded [instrument] is so [m]isleading that

10

it actually describes accurately some other property than that mortgaged or sold, a purchaser is not only not put on his guard thereby, but is actually put off his guard." See Mid-State Homes, Inc. v. Knapp, 156 So. 2d 122, 126 (La. App. 3 Cir. 1963) (citations omitted). On the other hand, a property description that "contains inaccuracies is nonetheless sufficient if it identifies the property with certainty and if it is not so inaccurate or faulty as to be misleading." C&G Constr., Inc. v. Valteau, 615 So. 2d 433, 436 (La. App. 4 Cir. 1993) (citations omitted).

Although these rules provide helpful guidance, Louisiana jurisprudence emphasizes that "no precise criteria can be established for distinguishing between descriptions which are sufficient to put third persons on notice and those which are not." Wood, 321 So. 2d at 918. As a result, "each case of this nature must be decided in the light of its own peculiar facts and circumstances." Id. Moreover, while the case literature often treats property descriptions in mortgages and deeds alike, at least one Louisiana property law scholar has recognized an important distinction:

> The description requirements for acts of sale of immovable property, and the willingness of courts to allow the eking of title to complete an insufficient description, are not automatically applicable to the contract of mortgage, which must "state precisely the nature and situation of each of the immovables or other property over which it is granted."

Dian Tooley-Knoblett, <u>24 La. Civ. L. Treatise</u>, Sales § 6:10 (2018 ed.).

Finally, a conventional mortgage is effective against third parties only after it is recorded in the mortgage records of the parish in which the immovable property is located. La. Civ. Code arts. 3307, 3338; <u>see</u> <u>Cimarex Energy Co. v. Mauboules</u>, 40 So. 3d 931, 944 (La. 2010) ("The primary focus of the public records doctrine is the protection of third persons against unrecorded interests.").

*B.*

In this case, it is undisputed that the Original Ocwen Mortgage contains the correct municipal address and tax ID number for Lot 47 but the incorrect lot number and metes and bounds description. Ocwen contends that this conflicting information gives rise to an ambiguity that can be clarified by extrinsic evidence and that the Bankruptcy Court erred in finding the description misleading and thus insufficient to create a valid mortgage. Ocwen advances three main arguments in support of its position: (1) the Bankruptcy Court's decision fails to acknowledge that the Original Ocwen Mortgage was discoverable through a search of the St. Tammany Parish public records; (2) the Bankruptcy Court failed to follow applicable Louisiana jurisprudence, as well as its own precedent, as affirmed by this Court, in <u>In re Heitmeier</u>; and (3) the Bankruptcy Court erroneously relied on jurisprudence

applying property description standards pertaining to the Louisiana Private Works Act, which explicitly provides that a municipal address is not a sufficient property description.

Real Time counters that the property description within the four corners of the Original Ocwen Mortgage is misleading because it specifically identifies Lot 46 and contains the metes and bounds description for Lot 46, rather than Lot 47. Real Time further submits that, although the municipal address and tax ID number are related to Lot 47, the municipal address of 161 Middlebrook Drive is insufficient to determine which lot was intended to be encumbered because the lots once shared this address, and a tax ID number is also insufficient, especially where the lot number identified matches the metes and bounds provided.

The Court addresses each argument in turn.

*i.*

Ocwen first reiterates that the property description in the Original Ocwen Mortgage was sufficient to place third parties on notice that the mortgage encumbered Lot 47 because (1) it identifies the property as "161 Middlebrook Dr. Slidell, LA," which is the proper address for Lot 47, and (2) describes the mortgaged property by the tax ID number that is linked to Lot 47. Ocwen then submits that the Bankruptcy Court failed to acknowledge that online searches of the St. Tammany Parish mortgage records using the property's municipal address and/or Maureen LeBlanc's name all

return the Original Ocwen Mortgage.  Because anyone searching for encumbrances on 161 Middlebrook Drive would have found the Original Ocwen Mortgage, the appellant contends, third parties had ample notice of the security interest.  And to the extent there was any ambiguity as to whether the Original Ocwen Mortgage encumbered Lot 46 or Lot 47, Ocwen argues that extrinsic evidence appropriately resolved that ambiguity.  Specifically, Ocwen submits that Ms. LeBlanc testified during trial that she intended to encumber Lot 47, rather than Lot 46.  The appellant also notes that Real Time did not argue that it holds the first-in-rank mortgage on Lot 47 until recently during this litigation.

The appellant also submits that the Bankruptcy Court erred in relying on In re Vezinot, which it contends is factually distinguishable from this case.  In In re Vezinot, 20 B.R. 950 (Bankr. W.D. La. 1982), the U.S. Bankruptcy Court for the Western District of Louisiana found misleading a property description that included an incorrect municipal address (one that did not exist) in addition to an incorrect physical description (one that did exist).  There, the property description "within the four corners" of the mortgage was "inaccurate and misleading" because it did "not refer a party searching the mortgage records to a deed or other instrument that would indicate that the property intended to be mortgaged was anything other than [a different property that did exist]."  Id. at 954.  Ocwen submits that that the description

in the Vezinot mortgage offered no notice to third parties that the intended property was encumbered because every property description in that mortgage was incorrect.  On the other hand, a third party reading the Original Ocwen Mortgage here is given express notice that the property encumbered is located at 161 Middlebrook Drive and is tied to the tax ID number for Lot 47, even if ambiguity is introduced by the incorrect lot number.  Because the Original Ocwen Mortgage provides notice where the Vezinot mortgage did not, Ocwen urges the Court that a different outcome is warranted.

    The Court recognizes that a third party reading the Original Ocwen Mortgage is given express notice that the property encumbered is located at 161 Middlebrook Drive.  However, the record reflects that Lots 46 and 47 are both linked to this municipal address.  First, Ms. LeBlanc testified that, when she purchased Lots 46 and 47 in 2001, they shared the municipal address of 161 Middlebrook Drive.[7]  Moreover, according to the testimony of former landman,

_____

[7] Although Ms. LeBlanc testified that she sold Lot 46 in 2004, the record contains no evidence as to whether Lot 46 ever received a separate physical address.
    According to the St. Tammany Parish Assessor's Office website (http://www.qpublic.net/la/loadpage.php?refurl=http://www.stassessor.org), Lot 46 was no longer listed under 161 Middlebrook Drive beginning in 2004, but it did not receive a distinguishing physical address (151 Middlebrook Drive) until 2007.  Thus, this governmental website reflects that, at the time the Original Ocwen Mortgage was executed and recorded in 2005, Lot 46 had no physical address whatsoever.  See In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2008 U.S. Dist. LEXIS 86538, at *271 (E.D.

15

Kristen Brown, an online search of 161 Middlebrook Drive in the
mortgage records of St. Tammany Parish generates mortgages
purportedly encumbering both lots.  Although the Original Ocwen
Mortgage appears in this search, the mortgage is listed as
encumbering "Lot 46," rather than Lot 47.[8]

---

La. Sept. 8 2008) ("The Fifth Circuit has determined that courts
may take judicial notice of governmental websites.") (citing <u>Kitty
Hawk Aircargo, Inc. v. Chao</u>, 418 F.3d 452, 457 (5th Cir. 2005)).

[8] Kristen Brown testified as follows concerning her online search
of the St. Tammany Parish public records:

> **Q:** Does the Clerk of Court for St. Tammany Parish provide
> the ability to search for public records online?
> **A:** Yes.
> **Q:** And did you search the online St. Tammany parish
> public records using the municipal address of 161
> Middlebrook Drive in Slidell and using the subdivision
> of Bayou Bonfouca Estates?
> **A:** Yes.
> . . .
> **Q:** Okay, Ms. Brown, does this document fairly and
> accurately represent a printout of the results for the
> online search of 161 Middlebrook Drive in Slidell in the
> subdivision of Bayou Bonfouca Estates?
> **A:** Using that criteria, yes.
> **Q:** Okay.  Your Honor, I'd like to offer, file, and
> introduce into evidence Ocwen Exhibit 15.
> . . .
> **The Court:** All, right, do you have an objection to 15,
> its authenticity, or to the fact that it reflects three
> encumbrances on Lots 46 – well, two on 46, one of 47,
> the status of the first is cancelled, the bottom two
> active?
> **Counsel for Real Time:** No, Your Honor, I do not.
> . . .
> **The Court:** . . . I also want to clarify and so the
> clerk's office automatically comes up with the
> inscriptions based on their search engine but it does
> designate different lots because they are both – both
> lots I guess are falling under 161 Middlebrook?

Furthermore, the mortgage incorporates by reference the Survey dated February 14, 1978, recorded as Instrument No. 382991 in the conveyance records of St. Tammany Parish. Containing the metes and bounds descriptions for both Lots 46 and 47, this recorded survey confirms that the metes and bounds provided in Original Ocwen Mortgage corresponds to Lot 46.

Finally, with respect to the tax ID number listed in the Original Ocwen Mortgage, one would have to look beyond the mortgage records to the records of the St. Tammany Parish *Assessor's* Office to learn that such ID number is tied to Lot 47. Therefore, no ambiguity is introduced by the incorrect lot number *until* one looks beyond the mortgage records. See In re Vezinot, 20 B.R. at 954 ("Third persons searching the records for mortgages should not be bound to look beyond the mortgage records unless the mortgage itself refers to another recorded instrument."). Because the property description in the Original Ocwen Mortgage is "so misleading that it actually describes accurately some other property than that mortgaged," it cannot be supplemented by extrinsic evidence, such as Ms. LeBlanc's testimony. See id.

---

**A:** It looks that way from this. I don't – every clerk's office is different when they enter in the legal description so it's not really –
**The Court:** But this definitely implies that there are two encumbrances on Lot 46 and one of Lot 47.

*ii.*

Ocwen next submits that the Bankruptcy Court failed to follow applicable Louisiana jurisprudence, as well its own precedent. According to Ocwen, Louisiana courts have held that the designation of a municipal address sufficiently describes immovable property, even when accompanied by an incorrect, more detailed property description. For support, Ocwen invokes C&G Construction, Inc. v. Valteau, 615 So. 2d 433 (La. App. 4 Cir. 1993), in which the Louisiana Fourth Circuit Court of Appeals held that a mortgage containing a municipal address and a property description that was incomplete but not otherwise erroneous extended to both lots tied to that address. There, the mortgage omitted reference to one of the lots to be sold but identified the municipal address that applied to both lots, as well as the conveyance book number and folio number for the omitted lot. Id. at 436-37. The C&G Construction court reasoned that the jurisprudence "require[s] only that the description be sufficient to identify the property with certainty and that it not be misleading." Id. at 436-37. Thus, C&G Construction, more precisely, stands for the proposition that "a reference to a municipal address in a property description which [i]s otherwise inaccurate is *sometimes* considered sufficient." Id. at 437 (emphasis added). Where, as here, an inaccurate property description is misleading, reference to a municipal address is not sufficient.

Ocwen also contends that the Bankruptcy Court failed to follow its own precedent, In re Heitmeier, as affirmed by this Court. According to Ocwen, opposite rulings should not have been reached in In re Heitmeier and this case, which involve nearly identical facts and were decided under nearly identical legal standards. In In re Heitmeier, No. 13-11320, 2013 WL 5705640 (Bankr. E.D. La. Oct. 18, 2013), the Bankruptcy Judge found adequate a property description in a deed of trust, Mississippi's analogue to a conventional mortgage, that contained the municipal address for one parcel of land but the metes and bounds description for an adjacent parcel. Applying Mississippi law, which requires only that a property description place "a reasonably diligent person on notice that there may be a security interest in the collateral," she determined that the deed of trust encumbered both parcels because it was "sufficient to 'raise a red flag to third parties' that both properties may be subject to the security interest." Id. at *4-5. In affirming that ruling, this Section of this Court rejected the contention that the deed of trust was not valid as to the lot that was identified solely by its municipal address:

> The Court disagrees. The bankruptcy court properly found that the street address for 202 County Farm Road and the metes and bounds description of 201 were sufficient to "raise a red flag to third parties" that both of the properties could be subject to the security interest.

*In re Heitmeier*, No. 13-6787, 2014 WL 1513886, at *2 (E.D. La. Apr. 16, 2014).

Although the Court agrees with Ocwen that it would have been provident of the Bankruptcy Court to address *Heitmeier* in its Reasons for Decision in this case, the Court finds *Heitmeier* factually distinguishable. In the *Heitmeier* deed, the street address was correct for one parcel, while the metes and bounds description was correct for an adjacent parcel. Here, with respect to the Original Ocwen Mortgage, the lot number and metes and bounds description were correct for one parcel (Lot 46), and the street address and tax ID were correct for another parcel (Lot 47), *but* that same street address had *also* applied to Lot 46. Thus, a third party may *not* have been put on notice that any further investigation was necessary.

### iii.

Finally, Ocwen contends that the Bankruptcy Court erroneously relied upon jurisprudence pertaining to the property description requirements of the Louisiana Private Works Act. For instance, Ocwen submits, the Bankruptcy Court invoked *Norman H. Voelkel Construction, Inc. v. Recorder of Mortgages for East Baton Rouge Parish*, 859 So. 2d 9 (La. App. 1 Cir. 2003), in which the Louisiana First Circuit concluded that a property description was insufficient to perfect a construction privilege under the Private Works Act. Contrary to the Louisiana Civil Code's requirements

for the creation of a conventional mortgage, Louisiana Revised
Statutes § 9:4831(C) expressly provides that a municipal address
alone is not an adequate property description for the perfection
of a *construction privilege*:

> Each filing made with the recorder of mortgages pursuant
> to this Part which contains a reference to immovable
> property shall contain a description of the property
> sufficient to clearly and permanently identify the
> property. A description which includes the lot and/or
> square and/or subdivision or township and range shall
> meet the requirement of this Subsection. Naming the
> street or mailing address without more shall not be
> sufficient to meet the requirements of this Subsection.

La. R.S. § 9:4831(C). Ocwen argues that the absence of an
equivalent provision in the law governing conventional mortgages
suggests that a municipal address can be sufficient to put third
parties on notice of the existence of a traditional mortgage. The
Bankruptcy Court also invoked Ocwen Loan Servicing, LLC v. Porter,
248 So. 3d 491 (La. App. 4 Cir. 2018), in which the Louisiana
Fourth Circuit cited Norman and its application of the Private
Works Act in finding a property description insufficient that
referenced a municipal address but lacked a metes and bounds
description. Ocwen submits that the Fourth Circuit erred in
applying the Norman court's analysis outside the context of the
Private Works Act and that this error should not be repeated here.

Although the Court recognizes a distinction between the
property description requirements for construction privileges and
conventional mortgages, whether or not a municipal address, alone,

is sufficient to give rise to a valid conventional mortgage is not at issue here. In this case, the Original Ocwen Mortgage contains a municipal address that was once linked to both Lots 46 and 47, coupled with a reference to Lot 46, a metes and bounds description for Lot 46, and a tax ID number that one would have to look beyond the mortgage records to learn is tied to Lot 47. The law is clear that whether a property description is sufficient to create a valid conventional mortgage must be decided on a case-by-case basis. See Wood v. Morvant, 321 So. 2d 914, 918 (La. 1 Cir. 1975). After conducting a *de novo* review, this Court finds that, under the "peculiar facts and circumstances" of this case, the property description in the Original Ocwen Mortgage was insufficient to give notice to third persons that it was intended to encumber Lot 47. See id. In other words, even if a municipal address, alone, could be sufficient to create a valid conventional mortgage, it would not be adequate under the facts present on this record.

III.

The next issue on appeal is whether the Bankruptcy Court erred in concluding that the SBA Mortgage ranks ahead of the Original Ocwen Mortgage when there is no evidence regarding the validity or rank of the SBA Mortgage in the record. Although the Bankruptcy Court's decision states that the parties stipulated to this fact, no formal stipulation can be found. Moreover, the SBA has never

filed a proof of claim, nor has it made any appearance in this proceeding.

<em>A.</em>

Under Louisiana law, a mortgage is a right that is only accessory to an underlying obligation. La. Civ. Code art. 3282. In other words, a mortgage exists and can be enforced only to the extent that the underlying obligation exists. <u>See</u> <u>id.</u> Thus, if there is no underlying debt, there is likewise no valid mortgage. <u>See</u> <u>Colonial Bank v. Marina Seafood Market, Inc.</u>, 425 So. 2d 722, 724 (La. 1983).

Because the Bankruptcy Court had no evidence before it regarding the amount or validity of the obligation underlying the SBA Mortgage, it was error for it to conclude that there was an existing security interest. <u>See</u> <u>In re Raelyn Sales, Inc.</u>, No. 3:01-CV-17, 2002 WL 226364, *5 (N.D. Tex. Feb. 12, 2002) (reversing bankruptcy court's finding where no evidence of record supported that conclusion).

<em>B.</em>

In addition, the Bankruptcy Court was not presented with evidence of the SBA Mortgage, or the corresponding Act of Correction, and therefore could not examine the sufficiency of those documents. Because the sufficiency of the SBA's documents was not litigated, the Bankruptcy Court did not have an opportunity

to consider whether the SBA improperly used an Act of Correction to correct a substantive error, rather than a clerical one.

Louisiana Revised Statutes § 35:2.1 authorizes acts of correction to correct clerical errors and other minor mistakes in recorded documents, after which the correction is given retroactive effect to the time of the recordation of the original document; it provides:

> A. A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by the notary or one of the notaries before whom the act was passed, or by the notary who actually prepared the act containing the error. The act of correction shall be executed by the notary before two witnesses and another notary public.
>
> B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.
>
> C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.
>
> D. This Section shall be in addition to other laws governing executory process.

La. R.S. § 35:2.1. Notably, Louisiana courts have emphasized that § 35:2.1 only applies to errors that are "clerical," rather than "substantive" in nature. See First Nat'l Bank, USA v. DDS Constr., LLC, 91 So. 3d 944, 955 (La. 2012); Cockerham v. Cockerham, 201

So. 3d 253, 262 (La. App. 1 Cir. 2013); <u>Vickers v. Vickers</u>, 25 So. 3d 210, 213–14 (La. App. 3 Cir. 2009). A "clerical error" results "'from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination.'" <u>First Nat'l Bank</u>, 91 So. 3d at 956 (quoting Black's Law Dictionary 622 (9th ed. 2009)). Stated differently, an error is substantive where "there is no evidence to suggest that it . . . resulted from a minor mistake or inadvertence during the document preparation process." <u>Vickers</u>, 25 So. 3d at 213.

Ocwen submits that the Bankruptcy Judge's statement regarding the rank of the SBA Mortgage is inconsistent with her characterization of the property description in the Original Ocwen Mortgage because both instruments contained the same error. On the one hand, the Bankruptcy Court found that the property description in the Original Ocwen Mortgage provides a metes and bounds description "wholly different from that of Lot 47," but on the other hand, she implicitly found that SBA Act of Correction remedied something other than a substantive error.

Because the Bankruptcy Court's decision fails to address the validity of the SBA Mortgage or the associated Act of Correction, the factual record is not sufficiently developed for this Court to determine the validity or rank of the SBA Mortgage. Under these circumstances, remand is appropriate.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the Bankruptcy Court's ruling that the property description in the Original Ocwen Mortgage was insufficient to encumber Lot 47 is AFFIRMED.  IT IS FURTHER ORDERED: that the matter is REMANDED for a determination on the merits as to the validity and rank of the SBA Mortgage, consistent with the standards discussed herein.

New Orleans, Louisiana, June 3, 2019

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE